FILED by _____ D.C.
ELECTRONIC

**Nov. 17, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ELI FLEISHER, Individually and on Behalf of All
Others Similarly Situated,

        Plaintiff,

    v.

RICHARD C. ROCHON, MARIO B. FERRARI,
ARNOLD HEGGESTAD, STEVEN P.
OPPENHEIM, JOSEPH S. DIMARTINO,
CHARLES P. STEINMETZ, ROBERT C.
GRIFFIN, SUNAIR SERVICES CORPORATION,
MASSEY SERVICES, INC., and BUYER
ACQUISITION COMPANY, INC.,

        Defendants.

_____/

**CASE NO:**

**JURY TRIAL DEMANDED**

**09-82315-Civ-Marra/Johnson**

### CLASS ACTION COMPLAINT

Plaintiff, Eli Fleisher, by his attorneys, alleges the following upon personal knowledge with respect to himself and his acts, and upon information and belief based, *inter alia*, upon the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.    This is a class action brought on behalf of the public common shareholders of Sunair Services Corporation ("Sunair" or the "Company") against the Company and its Board of Directors (the "Board" or "Individual Defendants"), alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated thereunder by the United States Securities and Exchange Commission ("SEC"), as well as state common law claims for breaches of the fiduciary duties of candor, loyalty, good faith, and due care, as well as aiding and abetting the aforesaid breaches of fiduciary duty in connection with

the acquisition of the Company by Massey Services, Inc. and Buyer Acquisition Company, Inc. (collectively "Massey") for $2.75 in cash for each share of Sunair common stock (the "Proposed Transaction"), an aggregate enterprise value of approximately $54 million.

2.     In approving the Proposed Transaction, the Individual Defendants breached their fiduciary duties of loyalty, good faith, and due care to Sunair's shareholders by, *inter alia*, (i) agreeing to sell Sunair without first taking steps to ensure that plaintiff and Class members (defined below) would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Massey without regard for Sunair's public shareholders.  Moreover, as alleged further herein, Massey aided and abetted the Individual Defendants' breaches of fiduciary duty.

3.     Compounding the unfairness of the Proposed Transaction is the Individual Defendants' attempt to obtain shareholder approval of the Proposed Transaction through materially incomplete and misleading disclosures contained in the Company's Solicitation/Recommendation Statement filed with the SEC in a Form Schedule 14A on October 2, 2009 (the "Proxy").

4.     Accordingly, this action seeks to enjoin the Proposed Transaction or, alternatively, rescission of the Proposed Transaction in the event defendants are able to consummate it, and compel the Individual Defendants to properly exercise their fiduciary duties to Sunair's shareholders and require defendants to disseminate an accurate and complete Proxy that fully and fairly informs shareholders of all material information in a non-misleading manner.

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a), 78t(a); SEC Rule 14a-9, 17 C.F.R. § 240.14a-9; and Florida common law.  This Court has subject matter jurisdiction over the claims made under the Exchange Act

2

pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.  The Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, the principal place of business of defendant Sunair is located within this District and because many of the acts forming the basis for this action occurred in this District.

## PARTIES

7.      Plaintiff is and has been a shareholder of Sunair common stock continuously since prior to the wrongs complained of herein.

8.      Sunair is a corporation organized and existing under the laws of the State of Florida and maintains its principal corporate offices within this District at 595 South Federal Highway, Suite 500, Boca Raton, FL 33432.  Sunair provides pest control and lawn care services to both residential and commercial customers through its wholly-owned subsidiary, Middleton Pest Control, Inc., located in Orlando, Florida. Middleton provides essential pest control services and protection against termites, insects, and bugs to homes and businesses.   In addition, Middleton supplies lawn care services to homes and businesses, which includes fertilization treatments and protection against disease, weeds and insects for lawns and shrubs.  Sunair's common stock trades on the American Stock Exchange under the ticker "SNR."  According to the 14A, 13,093,588 shares of Sunair's common stock are subject to the Proposed Transaction.

9.      Defendant Richard C. Rochon ("Rochon") has served as Chairman of the Sunair Board of Directors (the "Board") since February 2005.  According to the Company's Annual Proxy Statement filed on Form DEF 14A with the SEC on January 28, 2009 (the "2009 Proxy"), Rochon was appointed as Chairman of the Board in connection with Coconut Palm Capital Investors II, Ltd.'s ("Coconut Palm") investment in Sunair pursuant to a November 17, 2004 purchase agreement (the "November 17, 2004 Purchase Agreement").  In addition, Rochon has

served as a director of Sunair International Corp. since July 2004, and as Chairman and Chief Executive Officer ("CEO") of Coconut Palm Acquisition Company, a publicly held special purpose acquisition company, from September 2005 until April 2007. Furthermore, Rochon has served as Chairman and CEO of Royal Palm Capital Partners LLLP since 2002, where defendant Ferrari is also a partner and co-founder. Rochon, along with defendant Mario B. Ferrari and Sunair CEO Jack Ruff, is also an affiliate of RPC Financial Advisors, LLC, which had entered into a management services agreement with Sunair on January 7, 2008, effective as of February 7, 2008, for a period of three years (the RPC Agreement"). The RPC Agreement provides that RPC shall receive a transaction fee based on the "aggregate consideration" (as defined in the RPC Agreement) received in any merger transaction.   In connection with the Proposed Transaction, Sunair, Massey and RPC have agreed that RPC will receive a transaction fee equal to two percent (2%) of Sunair's enterprise value as determined by using the most recently available financial statements of Sunair at the closing. According to the Proxy Statement, the transaction fee payable to RPC would be $1,090,386, based on Sunair's financial statements as of June 30, 2009. Rochon has also served as a director of Devcon International Corp., where defendant Ferrari is also a director.

10. Defendant Mario B. Ferrari ("Ferrari") has served as Vice Chairman of the Board since February 2005. According to the 2009 Proxy, Ferrari is a partner and co-founder of Royal Palm Capital Partners LLLP, where defendant Rochon has served as Chairman and CEO since 2002. Ferrari is also an affiliate of RPC. Ferrari is also a director of Devcon International Corp., where defendant Rochon is also a director.

11. Defendant Arnold Heggestad ("Heggestad") has been a director of the Company since March 2003. According to the 2009 Proxy, Heggestad is Chair of the Company's Audit Committee.   Additionally, according to the 2009 Proxy, Heggestad is a member of the

4

Company's "Special Committee" that was formed in August 2008 to review an unsolicited offer for the sale of the Company and other strategic alternatives.

12.     Defendant Steven P. Oppenheim ("Oppenhiem") has been a director of the Company since January 2004. According to the 2009 Proxy, Oppenheim is Chair of both the Company's Compensation Committee and the Nominating Committee. Oppenheim is also a member of the Audit Committee.

13.     Defendant Joseph S. DiMartino ("DiMartino") has been a director of the Company since September 2005. DiMartino was nominated as director by Coconut Palm, in accordance with the November 17, 2004 Purchase Agreement. According to the 2009 Proxy, DiMartino is a member of the Company's Compensation Committee and the Nominating Committee.

14.     Defendant Charles P. Steinmetz ("Steinmetz") has been a director of the Company since June 2005 and was appointed to serve as the CEO of Middleton Pest Control, Inc. ("Middleton"), effective as of January 18, 2008. According to the 2009 Proxy, Steinmetz was nominated to serve as a director by Coconut Palm, in accordance with a Purchase Agreement and a Stock Purchase Agreement dated June 7, 2005, between Sunair's subsidiary, Sunair Southeast Pest Holdings, Inc. ("SSPH"), and the selling shareholders of Middleton. Steinmetz was the majority owner of Middleton from 1977 until it was purchased by SSPH. In addition, Steinmetz is a member of the Company's Special Committee.

15.     Defendant Robert C. Griffin ("Griffin") has been a director of the Company since February 2008. According to the 2009 Proxy, Griffin is Chair of the Company's Special Committee.

16.     Defendants referenced in ¶¶ 8 through 15 are collectively referred to as Individual Defendants and/or the Board. The Individual Defendants, as officers and/or directors of Sunair,

have a fiduciary relationship with Plaintiff and the other public shareholders of Sunair and owe them the highest obligation of good faith, fair dealing, loyalty and due care.

17. Defendant Massey Services, Inc. is a privately held Florida Corporation headquartered at 610 North Wymore Road, Maitland, Florida 32751 which provides residential and commercial pest control services, termite protection and lawn, tree and shrub care services in Florida, Georgia and Louisiana.

18. Defendant Buyer Acquisition Company, Inc. is a Florida Corporation and is a wholly-owned subsidiary of Massey that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on his own behalf and as a class action on behalf of the public shareholders of Sunair common stock (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. According to the Proxy, approximately 13,093,588 shares of Sunair's common stock, held by scores, if not hundreds, of individuals and entities scattered throughout the country, are subject to the Proposed Transaction

22. There are questions of law and fact that are common to the Class and predominate over questions affecting any individual members of the Class. These questions include, *inter alia*, the following:

a. Whether the Proxy contains materially false and/or misleading statements and omissions in violation of Section 14(a) of the Exchange Act;

b.      Whether plaintiff and the other members of the Class would be irreparably injured in the absence of injunctive relief requiring defendants to issue additional disclosures to shareholders to render certain of the statements in the Proxy complete and otherwise non-misleading;

c.      Whether the Individual Defendants breached the fiduciary duties they owed to the Company's public shareholders; and

d.      Whether Massey aided and abetted the Individual Defendants in breaching the fiduciary duties they owed to the Company's shareholders.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to, and causing injury to, the Class and, therefore, and final injunctive relief on behalf of the Class as a whole is appropriate.

## SUBSTANTIVE ALLEGATIONS

26.     On August 14, 2009, the Company announced its financial results for the third

quarter and fiscal year ended June 30, 2009. The Company showed significant growth in the

fourth quarter announcing that: (i) revenues from continuing operations for the third quarter 2009

were $13.1 million, compared to revenues of $14.7 million for the third quarter of 2008, (ii) net

income was $116,324 compared with a *loss* of $(860,438) in 2008, and (iii) the Company's net

income for the third quarter increased from a net *loss* of $(290,520) in 2008 to $116,324 in 2009.

27.     In a press release announcing the results, Jack I. Ruff, the Company's President

and Chief Executive Officer, stated that the Company, unlike many of its competitors, was

experiencing customer growth, as well as increased profitability and improved financial

performance:

> Since becoming CEO, *this is our fourth consecutive quarter of improved
> operating results over last year.* The Company had positive earnings per
> share from continuing operations for the first time since June 2005. *We
> are continuing to improve Sunair's operational efficiencies resulting in
> increased profitability and improved financial performance. We are
> seeing improvement in all aspects of our financial performance;* our
> gross profit increased 3.6% from 6 1.2% to 64.8% while our operating
> expenses decreased 1.9% from 64.6% of revenue to 62.7%. While both
> national and local competitors are having issues with customer retention,
> *we are increasing our customer count on a monthly basis.* We continue
> to focus on various initiatives aimed at organic revenue growth and
> expanding margins which continue to increase shareholder value, help our
> Company in the current challenging business environment, as well as
> strengthen Sunair's long-term growth prospects. Our focus remains on
> revenue growth, increasing profitability and deleveraging.

28.     Despite the strong performance through the third quarter of 2009 and promising

future prospects, in a press release dated September 29, 2009, the Company announced that it

had entered into a merger agreement with Massey:

> Deerfield  Beach,  FL  —September  29,  2009—  Sunair  Services
> Corporation (AMEX: SNR) today announced that it has entered into a
> definitive merger agreement with Massey Services, Inc. pursuant to which

Massey would acquire all of the outstanding common stock of Sunair in an all-cash transaction valued at $2.75 per share, which represents a premium of approximately 47% over the stock's closing price on September 25, 2009. Massey's operations would merge with Middleton Pest Control, Inc., a wholly owned subsidiary of Sunair with headquarters located in Orlando, Florida, which provides pest control and lawn care services to both residential and commercial customers. The transaction is expected to close in November subject to the approval of Sunair's shareholders, customary regulatory approvals and other closing conditions. Following the closing, Harvey L. Massey will be the Chairman and CEO of the combined companies, which will be privately held.

Massey Services is headquartered in Orlando, Florida and provides residential and commercial pest control services, termite protection and lawn, tree and shrub care services in Florida, Georgia and Louisiana. Massey is a shareholder of Sunair and owns approximately 9.63 % of Sunair's common stock.

29.     On that same day, the Company filed a Form 8-K with the SEC in which it disclosed the operating Agreement and Plan of Merger for the Proposed Transaction (the "Merger Agreement"). The announcement and filings reveal that the Proposed Transaction is the product of a flawed sales process and is being consummated at an unfair price.

### The Unfair Price

30.     The Board is allowing Massey to purchase the Company at the best time for Massey, and the worst time for the Company's shareholders. The Company's current stock price is depressed due, primarily, to the recent turmoil in the markets and does not reflect the intrinsic value of the Company. In fact, earlier in 2009, the Board rejected an offer from Massey to acquire the Company for $3.00 per share, believing that that price was insufficient. Indeed, prior to the onset of the current economic recession, the Company's shares were trading at nearly $3.00 per share. Moreover, the Company has a book value in excess of $3.87 per share. Nevertheless, now after their "fourth consecutive quarter of improved operating results" the Board plans to sell the Company for even less than the price it rejected as inadequate earlier this year.

9

## The Preclusive Deal Protection Devices

31.     Moreover, to the detriment of Sunair's shareholders, the terms of the Agreement

and Plan of Merger among Sunair and Massey (the "Merger Agreement") substantially favor

Massey and are calculated to unreasonably dissuade potential suitors from making competing

offers.

32.     The Individual Defendants have agreed to a "No Solicitation" provision in

Section 6.02 of the Merger Agreement that unfairly restricts the Board from soliciting alternative

proposals by, among other things, constraining its ability to communicate with potential buyers,

and in some circumstances, even consider competing proposals.  This provision also prohibits

the Individual Defendants from initiating contact with possible buyers, even if the Board believes

that communicating with a potential bidder could reasonably lead to a superior offer or an offer

more closely aligned with the interests of Sunair's shareholders.  Furthermore, Section 6.02 of the

Merger Agreement goes on to state that Sunair must notify Massey of any proposals, offers, or any

overtures of interest from other potential suitors and it must provide the identity of those potential suitors.

Section 6.02(a) of the Merger Agreement states, in relevant part:

> (a) *The Company agrees that neither it nor any Subsidiary shall*, nor shall it
> authorize or permit the Representatives of the Company or its Subsidiaries to,
> directly or indirectly: *(i) initiate, solicit or encourage (including by way of
> furnishing information or assistance) any inquiries or the making of any
> proposal that constitutes, or may reasonably be expected to lead to, any
> Competing Transaction Proposal (as defined below), (ii) enter into discussions
> or negotiate with any Person or entity in furtherance of such inquiries or to
> obtain a Competing Transaction Proposal, (iii) enter into any agreement with
> respect to a Competing Acquisition Proposal, (iv) agree to or endorse any
> Competing Transaction Proposal, or (v) authorize any of the officers or
> directors of the Company or any of its Subsidiaries to take any such action*, and
> the Company shall use its reasonable efforts to cause the directors, officers,
> employees, agents and representatives of the Company and its Subsidiaries
> (including, without limitation, any investment banker, financial advisor, attorney
> or accountant retained by the Company) not to take any such action.  Nothing
> contained in this Section 6.02 shall prohibit the Board of Directors of the
> Company from furnishing information to, or entering into discussions or

10

negotiations with, any Person or entity that makes an unsolicited, bona fide expression of interest in writing to enter into a Competing Transaction Proposal if: (A) the Board of Directors of the Company, after consultation with and advice from Akerman Senterfitt (or other outside counsel of recognized reputation), determines in good faith that the failure to do so is reasonably likely to result in a violation by the Board of Directors of its fiduciary duties to the Company's shareholders under applicable Law, (B) the Board of Directors of the Company has no reason to believe that the expression of interest is not made in good faith, and (C) *promptly after furnishing such information to, or entering into discussions or negotiations with, such Person or entity, the Company provides verbal notice within 48 hours and written notice within 72 hours to Parent to the effect that it plans to furnish information to, or enter into discussions or negotiations with, such Person or entity.*

[Emphasis added].

33.     In addition, section 6.02 of the Merger Agreement gives Massey the opportunity to counter any "Superior Acquisition Proposal" that is made for Sunair.  Section 6.02(c) of the Merger Agreement states, in relevant part:

(c) Notwithstanding any other provision of this Agreement, if the Board of Directors of the Company determines, in its good faith judgment, that a Competing Transaction Proposal is a Superior Acquisition Proposal (as defined below), the Board of Directors of the Company may terminate this Agreement; provided, that: (A) the Company provides at least five (5) business days prior written notice to the Parent of its intention to terminate this Agreement; (B) during such five (5) business day period (or longer period if extended by the Company and the Parent) (the "Negotiation Period*"), the Company agrees to negotiate in good faith with the Parent regarding such changes as the Parent may propose to the terms of this Agreement, with the intent of enabling the Company to agree to a modification of this Agreement so that the transactions contemplated hereby may be consummated*; and (C) after expiration of the Negotiation Period, the Competing Transaction Proposal remains a Superior Acquisition Proposal (taking into account any modifications to the terms hereof proposed by the Parent) and the Board of Directors of the Company confirms its determination (after consultation with outside legal counsel and its outside financial advisors) that such Competing Transaction Proposal is a Superior Acquisition Proposal; and (D) pay termination fee as provided in Section 8.02 of this Agreement.  *If the party making the Superior Acquisition Proposal comes forth with a further proposal, further notice pursuant to this Section shall be provided to Parent and there shall be an additional Negotiation Period pursuant to this Section.*

[Emphasis added].

34. Section 8.02 of the Merger Agreement contains a "Termination Fee" of $2.75 million if the Proposed Transaction is terminated on or prior to November 15, 2009 and $3.5 million if the Proposed Transaction is terminated after November 15, 2009 as another deal protection device. Moreover, the Termination Fee is payable even in the event the Board terminates the Merger Agreement pursuant to the lawful exercise of its fiduciary duty, which reinforces the notion that the Termination Fee is an improper deterrent to the Board's seeking the best possible price for Sunair's shareholders.

35. These acts, combined with other defensive measures the Company has in place, effectively preclude any other bidders who might be interested in paying more than Sunair for the Company, and have the effect of limiting the ability of the Company's stockholders to obtain the best price for their shares.

### The Materially Misleading Proxy Statement

36. Compounding the unfairness of the Proposed Transaction, the Proxy Statement filed with the SEC On October 2, 2009 fails to disclose material information, and/or contains materially false and misleading information, with respect to the process and events leading up to the Proposed Transaction, as well as the opinion and analyses of Sunair's financial advisor, Hyde Park Capital Advisors LLC ("HPC"), which deprives Sunair's shareholders of the ability to make a fully informed decision as to whether to vote in favor of the Proposed Transaction. As alleged below, this omitted information, if disclosed, would significantly alter the total mix of information available to the average holder of Sunair's common stock. Among other things:

a. The Proxy Statement is materially misleading in that it fails to disclose whether HPC had previously provided any investment banking or other financial services to Sunair, or Massey; or the amount or nature of future investment banking or other financial services that HPC expects to provide to Sunair, Massey, or both. Moreover, the Proxy Statement

is materially misleading in that it fails, in any fashion, to quantify the fees that are being paid to HPC in connection with the Proposed Transaction, stating only that HPC is to be paid a "customary fee" for its services, without disclosing how much of HPC's fee, if any, is contingent upon consummation of the Proposed Transaction.

b.    The Proxy Statement is materially misleading in that it fails to disclose any details as to why HPC, among the two candidates interviewed, was selected by the Special Committee of the Company's Board of Directors to provide valuation services and render a fairness opinion in connection with the Proposed Transaction;

c.    The Proxy Statement is materially misleading in that it fails to disclose any details of the role of RPC in the Proposed Transaction that warrant the payment of a transaction fee equal to 2% of the Company's enterprise value; details about the relationship between RPC and Defendants Rochon, Ferrari and Sunair CEO Jack Ruff; or details concerning the proceeds to be paid to Defendants Rochon, Ferrari and non-defendant Ruff personally in connection with the Proposed Transaction;

d.    The Proxy Statement is materially misleading in that it fails to disclose any details surrounding the formation and authority of the Special Committee, such as whether the Special Committee was formed because members of the Sunair Board of Directors suffered from potential conflicts of interests based on their interests in Coconut Palm, their role in litigation related to the potential acquisition of Sunair, their role in RPC, or for any other reasons; or whether the Special Committee had the authority to retain its own legal and/or financial advisors;

e.    The Proxy Statement is materially misleading in that it fails to disclose any details surrounding Michael Brauser's role, if any, in the negotiation of the Proposed Transaction in light of the consulting agreement between Massy and Mr. Brauser, in which Mr.

13

Brauser was to receive a $1 million consulting fee for facilitating Massey's acquisition of Sunair, or any details concerning Mr. Brauser's relationship with Sunair's management or the Company's Board of Directors;

        f.      The Proxy Statement is materially misleading in that it fails to disclose the criteria used for selecting, or excluding, the potential bidders contacted by HPC; fails to disclose any details concerning the means by which the 89 parties were contacted by HPC; and fails to provide any details concerning the expressions of interest received by HPC;

        g.      The Proxy Statement is materially misleading in that it fails to disclose when Massey acquired the 380,972 shares of Sunair stock that it owned prior to October 20, 2008, or whether the acquisition of those shares was made to effectuate its acquisition of the Company;

        h.      The Proxy Statement is materially misleading in that it fails to disclose any details concerning Massey's revision of its July 28, 2008 expression of interest in acquiring Sunair for not more than $4.00 per share to its September 16, 2008 non-binding expression of interest in acquiring the Company for $3.00 per share;

        i.      The Proxy Statement is materially misleading in that it fails to disclose whether any parties other than Companies A and B made inquiries concerning the sale of the Company in or about November 28, 2008, and fails to disclose if there were any communications with either Company A or B between November 2008, when they first made inquiries about Sunair, and January 16, 2009, when Defendant Rochon was contacted by a senior executive of Company A;

        j.      The Proxy Statement is materially misleading in that it fails to disclose any details concerning Company A's expression of interest in acquiring Sunair's lawn care operations;

k.     The Proxy Statement is materially misleading in that it fails to disclose whether the Special Committee requested, or had been provided with management projections of Sunair's revenues and expenses prior to December 8, 2008, and if not, why the Special Committee had not sought such information previously in light of the expressions of interest and/or inquiries that had been made regarding the sale of the Company;

l.     The Proxy Statement is materially misleading in that it fails to disclose adequate details about the "Dissident" lawsuit, including why Defendant Steinmetz was not named as a defendant in the suit, and whether he suffered any conflict of interests in connection with the Proposed Transaction arising from that litigation, or otherwise;

m.     The Proxy Statement is materially misleading in that it fails to disclose details concerning the reasons for Defendant Steinmetz's abstention from the vote on the approval of the Proposed Transaction as a member of the Special Committee, and fails to disclose details concerning the reasons that Defendants Ferrari, Rochon and Steinmetz abstained from voting on the approval of the Proposed Transaction as part of the Board of Directors vote on the Proposed Transaction;

n.     The Proxy Statement is materially misleading in that it fails to disclose details concerning the Company negotiation of limitless indemnification of Sunair's directors after the Proposed Transaction, and the economic impact of that indemnification, if any, on the consideration being paid to Sunair's public shareholders under the Proposed Transaction;

o.     The Proxy Statement is materially misleading in that it fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by HPC, so that shareholders can properly assess the credibility of the various analyses performed by HPC and relied upon by the Board in recommending the Proposed Transaction. Although the Proxy Statement cautions that information presented in tabular format could create a "misleading

15

or incomplete view of the processes underlying [HPC's] analysis and opinion," almost all the information presented in the Proxy Statement relating to HPC's analysis and opinion is in tabular format;

p.      The Proxy Statement is materially misleading in that it fails to disclose the reasons for the inclusion of the net working capital deficit of $2.6 million in the enterprise value calculations in connection with the total consideration being paid in the Proposed Transaction when such metric is normally not part of the enterprise value calculation and had the effect of overstating the enterprise value by approximately 9%;

q.      The Proxy Statement is materially misleading in that it fails to disclose details concerning the transactions used by HPC and the companies involved in those transactions, the criteria for selecting those transactions, and whether HPC used all transactions meeting those criteria, the size of each transaction, and the premium observed for each transaction in connection with the *Premiums Paid Analysis*;

r.      The Proxy Statement is materially misleading in that it fails to disclose the criteria utilized by HPC to select the companies and the multiples used in its *Sunair Comparable Companies Analysis*, particularly the reasons for the inclusion of Rentokil Initial, plc and the Scotts Miracle-Gro Company in such analysis, or the reasons for discounting the multiples of those companies by 20%;

s.      The Proxy Statement is materially misleading in that it fails to disclose the criteria used by HPC for the selected transactions, the size of each transaction, the date each transaction closed, or the multiples for each selected transaction, in the *Sunair Precedent Transactions Analysis*;

t.      The Proxy Statement is materially misleading in that it fails to disclose the financial projections or forecasts relied upon by HPC in the *Sunair Discounted Cash Flow*

*Analysis,*, including the projected future free cash flow, the weighted average cost of capital HPC calculated for Sunair and used as the "risk adjusted discount rate," and the terminal values observed; and

u.     The Proxy Statement is materially misleading in that it fails to disclose the reasons why HPC determined that implied price per share based on its analyses was $2.37 to $2.59 per share when HPC's Discounted Cash Flow Analysis yielded an implied value range of $3.33 to $3.62 per share; weight given to each analysis in calculating the combined implied price per share in the *Summary* of HPC' s analyses.

### Self-Dealing and Conflict of Interests

37.     By reason of their positions with Sunair, the Individual Defendants are in possession of non-public information concerning the financial condition and prospects of Sunair, and especially the true value and expected increased future value of Sunair and its assets, which they have not disclosed to Sunair' s public shareholders. Moreover, despite their duty to maximize shareholder value, the Defendants have clear and material conflicts of interest and are acting to better their own interests at the expense of Sunair's public shareholders.

38.     As alleged above, the Company entered into the RPC Agreement pursuant to which it will receive a transaction fee equal to 2% of the Company's enterprise value in the event of a merger. According to the Proxy Statement, the transaction fee payable to RPC is $1,090,386 based on the Company's June 30, 2009 financial results.  Defendants Rouchon and Ferrari, along with Sunair CEO Ruff, are affiliates of RPC.

39.     In addition, each of the Individual Defendants own stock and/or stock options of the Company which will be cashed out upon consummation of the Proposed Transaction. Defendants DiMartino, Ferrari, Griffin, Heggestad, Oppenheim, Rochon, and Steinmetz will

17

receive $10,950, $10,950, $25,800, $10,950, $10,950, $10,950, and $10,950, respectively by cashing out their shares and options.

40.     In addition, on February 19, 2009, Sunair shareholders Michael Brauser (who had entered into a consulting agreement with Massey to assist in its acquisition of Sunair), Dru Schmitt and Michael Herman (the "Dissident Group") filed a lawsuit against Sunair, Coconut Palm and Coconut Palm Inc. In that litigation, the Dissident Group sought, *inter alia,* to take control of Sunair by replacing its current board with their six nominees.

41.     On March 12, 2009, Sunair filed a complaint against the Dissident Group and certain other co-defendants for violations of federal securities laws based, among other things, on the information statement that the Dissident Group filed with the SEC, in which the Dissident Group sought to remove the Company's Board of Directors and replace it with their nominees. The complaint alleges that the Dissident Group and certain other co-defendants unlawfully solicited proxies from the Company's shareholders in violation of Section 14(a) and 14(c) of the Exchange Act of 1934, as amended ("Exchange Act") in connection with their actions to take control of the Company and replace the Board of Directors.

42.     Consummation of the Proposed Transaction will resolve both the Dissident Group and Sunair litigation.

43.     Based on the aforementioned, the Proposed Transaction is wrongful, unfair and harmful to Sunair's public shareholders, and represents an effort by Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members. The Proposed Transaction is an attempt to deny Plaintiffs and the other members of the Class their rights while usurping the same for the benefit of defendants on unfair terms.

44.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## COUNT I

### Violations of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Against Sunair and the Individual Defendants)

45.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

46.     Defendants have issued the Proxy with the intention of soliciting shareholder support of the Proposed Acquisition.

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

48.     Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

49.     The misrepresentations and omissions in the Proxy are material to plaintiff and the Class, and plaintiff and the Class will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

50.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein. This claim is asserted against the Individual Defendants.

51.     The Individual Defendants acted as controlling persons of Sunair within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high level positions with the Company, participation in and/or awareness of the Company's finances and operations, and/or participation in and/or knowledge of the negotiations, recommendation of, and approval of the Proposed Transaction of Sunair by Massey, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the Proxy Statement which the Plaintiff contends contained misleading statements of material fact and omitted material fact that were necessary to render them not misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's internal books and records, reports, financial information, plans, projections, forecasts, and other data not available to its shareholders prior to and after the Proxy Statement was issued and had the ability to prevent the issuance of the Proxy Statement or cause the Proxy Statement to be corrected or updated.

52.     As set forth above, Sunair and the Individual Defendants each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with the sale of Sunair to Massey.

## COUNT III

### Breach of Fiduciary Duty
**(Against the Individual Defendants)**

53.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein. This claim is asserted against the Individual Defendants.

54.     As members of the Company's Board, the Individual Defendants have fiduciary obligations to: (a) undertake an appropriate evaluation of Sunair's net worth as a merger/acquisition candidate; (b) take all appropriate steps to enhance Sunair's value and attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of the Company's public shareholders; (d) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of Sunair's public shareholders; (e) actively evaluate the Proposed Transaction and engage in a meaningful auction with third parties in an attempt to obtain the best value on any sale of Sunair; and (f) disclose all material information in soliciting shareholder approval of the Proposed Transaction.

55.     The Individual Defendants have breached their fiduciary duties to plaintiff and the Class.

56.     As alleged herein, defendants have initiated a process to sell Sunair that undervalues the Company and vests them with benefits that are not shared equally by Sunair's public shareholders – a clear effort to take advantage of the temporary depression in Sunair's stock price caused by the current economic conditions. In addition, by agreeing to the Proposed Transaction, defendants have capped the price of Sunair at a price that does not adequately reflect the Company's true value. Defendants also failed to sufficiently inform themselves of Sunair's value, or disregarded the true value of the Company, in an effort to benefit themselves.

Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and board that is committed to the Proposed Transaction.

57. As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to plaintiff and the other members of the Class, and will further a process that inhibits the maximization of shareholder value.

58. Plaintiff and the Class have no adequate remedy at law.

**COUNT IV**

**Breach of the Fiduciary Duty of Disclosure**
**(Against the Individual Defendants)**

59. Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein. This claim is asserted against the Individual Defendants.

60. Defendants have already caused materially misleading and incomplete information to be disseminated to the Company's public shareholders. Defendants have an obligation to be complete and accurate in their disclosures.

61. The Proxy fails to disclose material financial information, including financial information and information necessary to prevent the statements contained therein from being misleading.

62. The misleading omissions and disclosures by defendants concerning information and analyses presented to and considered by the Board and its advisors affirm the inadequacy of disclosures to the Company's shareholders. Because of defendants' failure to provide full and fair disclosure, plaintiff and the Class will be stripped of their ability to make an informed decision on whether to vote in favor of the Proposed Transaction, and thus are damaged thereby.

63. Plaintiff and the members of the Class have no adequate remedy at law.

## COUNT V

### Aiding and Abetting the Board's Breaches of Fiduciary Duty
### (Against Sunair and Massey)

64.     Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.  This claim is asserted against Sunair and Massey.

65.     Defendants Sunair and Massey knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.  In connection with discussions regarding the Proposed Transaction, Sunair provided, and Massey obtained, sensitive non-public information concerning Sunair's operations and thus had unfair advantages which enabled it to acquire the Company at an unfair and inadequate price.

66.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their Sunair shares.

67.     Plaintiff and the members of the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.     Declaring that this action is properly maintainable as a class action, certifying Plaintiff as a Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.     Declaring that the Proxy Statement contained misleading statements of material fact and  omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and that Sunair and the Individual Defendants violated said provisions;

C.     Declaring that the Individual Defendants were controlling persons of Sunair within the meaning of Section 20(a) of the Exchange Act and that they violated said provision by their acts and failures to act that resulted in the above-described violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

D.     Declaring that the Individual Defendants breached their fiduciary duties to disclose fully and fairly all material information within the Board's control in seeking shareholder approval of the Proposed Transaction;

E.     Declaring that the Individual Defendants breached their fiduciary duties of good faith, trust, and loyalty in seeking shareholder approval of the Proposed Transaction despite its lack of fairness to the common shareholders;

F.     Declaring that Sunair and Massey knowingly aided and abetted the Individual Defendants in breaching their fiduciary duties;

G.     Enjoining the Proposed Transaction or rescinding the Proposed Transaction if it is consummated;

H.     Directing that Defendants pay to Plaintiff and the other members of the Class all damages caused to them and account for all profits and any special benefits obtained as a result of their wrongful conduct;

I.     Awarding Plaintiff the costs and disbursements of this action, including a reasonable allowance for Plaintiff's attorneys and experts' fees; and

J.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 16, 2009                 **Respectfully submitted,**

**BARKER, RODEMS & COOK, P.A.**

By: _____

Chris A. Barker
Florida Bar Number 885568
400 North Ashley Drive, Suite 2100
Tampa, FL  33602
Tel.:  (813) 489-1001
Fax:  (813) 489-1008

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Timothy J. MacFall
919 North Market Street, Suite 980
Wilmington, DE  19801
Tel.:  (302) 295-5310
Fax:  (302) 654-7530

**STULL, STULL & BRODY**
Aaron Brody
6 East 45th Street
New York, NY  10017
Tel.:  (212) 687-7230
Fax:  (212) 490-2022

**WEISS & LURIE**
Joseph H. Weiss
551 Fifth Avenue
New York, NY  10176
Tel.:  (212) 682-3025
Fax:  (212) 682-3010

***Attorneys for Plaintiff***

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

ELI FLEISHER ("Plaintiff") declares:

1.      Plaintiff has fully reviewed the facts and allegations of the Complaint in this action against Sunair Services Corporation ("Sunair") and certain other defendants and has authorized the filing of the Complaint.

2.      Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or to participate in this action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition or trial, if necessary.

4.      Plaintiff is the current owner of 40,000 shares of Sunair common stock and has owned shares of the security at issue since before the occurrence of the wrongs complained of in the Complaint.

5.      Plaintiff has not served or sought to serve as a representative party on behalf of a class under the federal securities laws during the three years prior to the date of this Certification unless otherwise stated in the space below:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive Plaintiff's pro rata share of any recovery, or as ordered or approved by the Court including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 12 day of November, 2009.

By: _____
ELI FLEISHER

**EXHIBIT**
A

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**Nov. 17, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS

ELI FLEISHER, Individually and on Behalf of All Others Similarly Situated,

**(b)** County of Residence of First Listed Plaintiff  Luzerne, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Barker, Rodems & Cook, P.A.
400 North Ashley Drive, Suite 2100, Tampa, Florida  33602
(813) 489-1001

## DEFENDANTS

RICHARD C. ROCHON, et al.,

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

09-cv-82315 MARRA

**(d)** Check County Where Action Arose:  ☐ MIAMI-DADE  ☐ MONROE  ☒ BROWARD  ☒ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☐ NO

JUDGE _____     DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

15 USCA Sections 78n(a) and 78t(a).  Breaches of fiduciary duties in connection with an acquisition.

LENGTH OF TRIAL via  10  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  November 16, 2009

**FOR OFFICE USE ONLY**

AMOUNT    # 548090    RECEIPT # _____    IFP _____

27 of 27